Douglas TERRELL *v.* AUSTIN BRIDGE CO.

CA 83-261                                     660 S.W.2d 941

Court of Appeals of Arkansas
Division II
Opinion delivered November 16, 1983

*Louis F. Mathis,* for appellant.

*Lavender, Rochelle, Barnette, Franks & Arnold,* by: *Charles D. Barnette,* for appellee.

MELVIN MAYFIELD, Chief Judge. This is an appeal from a decision of the Workers' Compensation Commission which adopted an administrative law judge's finding that appellant had failed to prove by a preponderance of the evidence that he was entitled to permanent partial disability and rehabilitation benefits.

Appellant was injured when the bridge he was working on partially collapsed and he fell about 35 feet to the ground. He was unable to work for four months during which time he was paid compensation. His appeal for additional compensation is based on the contention that he has an extreme fear of heights due to his fall and, therefore, is no longer able to pursue his occupation of iron worker because it requires climbing.

The appellant relies on the testimony of Dr. John Ewing Harris, an independent witness selected by the law judge, that claimant's psychological injury and subconscious fear of heights and falling was as close to a permanent disability as he had seen; that the accident was the overriding

factor in this condition; and that this fear was ingrained and permanent. There was other evidence, however, that appellant was earning more at the time of the hearing, nearly two years after the accident, than he had been when he fell. Appellant admitted this was true but testified that, although he had been making this wage for more than a year, he did not think this would continue much longer because his supervisor was just doing him a favor. Also there was evidence that appellant had taken a welding course while working for another employer and had done some construction welding; that after the accident he had worked at heights of 10 to 15 feet; and that he was a good hand both before and after the accident.

Ark. Stat. Ann. § 81-1302 (e) (Repl. 1976) defines disability as being the "incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the injury." In discussing what is meant by this language, the Arkansas Supreme Court in *Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961), quoted extensively from Larson, *Workmen's Compensation Law* as follows:

> The key to the understanding of this problem is the recognition, at the outset, that the disability concept is a blend of two ingredients, whose recurrence in different proportions gives rise to most controversial disability questions: the first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is de facto inability to earn wages, as evidenced by proof that claimant has not in fact earned anything.

And the court concluded by holding that "consideration should have been given, along with the medical evidence, to the appellant's age, education, experience, and other matters affecting wage loss."

In *Abbott* v. *C. J. Leavell & Co.*, 244 Ark. 544, 549, 426 S.W.2d 166 (1968), the court said "because appellant is

making as much money now as he did before does not necessarily mean he has the 'capacity' to earn that much," and that it was also proper to consider how long he would be able to make that much. The concurring opinion enlarges on these matters as follows:

> Compensation is paid to those suffering a compensable disability. In order to give the term disability substance and meaning it is keyed to the capacity to earn wages: Larson, *Workmen's Compensation Law*, §§ 57.22 and 57.34 discusses the problem similar to the case at bar. "If the employee, as often happens, returns to his former work for the same employer after his injury, or is offered it, at a wage at least as high as before, there is a strong presumption against loss of earning capacity. . . . Wages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity, and, for purposes of determining permanent disability, are to be discounted accordingly. The same is true if the injured man's friends help him to hold his job by doing much of his work for him, or if he manages to continue only by delegating his more onerous tasks to a helper."

> . . . .

> "The ultimate objective of the disability test is, by discounting these variables, to determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured, taking wage levels, hours of work, and claimant's age and state of training as of exactly the same period used for calculating actual wages earned before the injury. Only by the elimination of all variables except the injury itself can a reasonably accurate estimate be made of the impairment of earning capacity to be attributed to that injury." Larson, *Workmen's Compensation Law*, § 57.21.

244 Ark. at 552 and 553.

From the above, we think it clear that a person injured on the job may suffer disability because of a physical loss or because of an inability to earn as much as he was earning when he was hurt and that a person can be disabled who has lost either or both. Also in *Owens* v. *National Health Laboratories*, 8 Ark. App. 92, 648 S.W.2d 829 (1983), we held that some psychological injuries might be compensable under our law. In the instant case, appellant was earning higher wages at the time of the hearing than he was at the time of the accident. Whether he had a compensable disability, however, was a question for the Commission to determine under the law we have discussed. We must affirm that decision unless we are convinced that fair-minded men could not have reached the same conclusion. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W.2d 360 (1979). Guided by that standard, we affirm.

COOPER and CORBIN, JJ., agree.