STATE TREASURER, SECOND INJURY FUND, et al.
*v.* Dewey COLEMAN

CA 85-136                                              699 S.W.2d 401

Court of Appeals of Arkansas
En Banc
Opinion delivered November 13, 1985

*Steve Clark*, Att'y Gen., by: *Rick D. Hogan*, Asst. Att'y Gen., for appellant.

*Byrd, Cobb, Norwood, Lait, Dix & Babaoglu*, by: *Kathleen L. Caldwell*, for appellee, Dewey Coleman.

*Boswell, Tucker & Smith*, by: *W. Lee Tucker*, for appellee Hardwick Airmasters.

DONALD L. CORBIN, Judge. This is an appeal by the Second Injury Fund (SIF) from a Workers' Compensation Commission decision that appellee Dewey Coleman had suffered a "previous disability", in addition to his compensable injury incurred while working for appellee Hardwick Airmasters, and that SIF was required to pay for that degree of disability arising from Coleman's first injury. SIF contends on appeal that Coleman's first injury was not acting to independently produce some degree of permanent disability both before and after the date of the last injury and that because the employer, Hardwick Airmasters, had no knowledge of the prior injury, the SIF could not be liable for Coleman's prior conditions. We reverse and remand.

Appellee Coleman's first back injury occurred on August 3, 1981, while working for Brown and Root, Inc. There is no medical report in the record of this injury. He had no history of back pain prior to this time. After this injury Coleman visited the doctor on September 9, 30, October 4, and November 11 of 1981 for back problems. He was operated on in December of 1981, and, with the exception of a slip on the ice in January of 1982, had no further problems with his back until he injured it on September 13, 1982. On March 4, 1982, a Joint Petition Order was entered on a workers' compensation claim, awarding Coleman $12,000, plus outstanding medical bills, to settle his claim against Brown and Root. There was no mention of any degree of permanent disability in either the order or petition. The only report in the record by the surgeon, Dr. DeSaussure, after the first surgery and prior to the second injury, gave no degree of permanent disability, noted that Coleman was doing extremely well, and stated that he could be able to return to work in a couple of months to a job which required the lifting of 200 or more pounds. Coleman testified that he was given no physical restrictions upon being released for work after the first operation. After the first surgery for the second injury, Dr. DeSaussure rated his permanent partial disability from the first injury at 15% and increased it by 10% as a result of the second injury. Dr. Thomas, who performed the third

operation, the second for the second injury, gave Coleman a permanent partial disability rating of 10% as a result of the first injury and an additional 15% as a result of the second.

Appellee Coleman did not return to work for Brown and Root after the first accident, having been laid-off, and applied for work with appellee Hardwick Airmasters in May of 1982. He did not list his employment with Brown and Root on the employment application, nor did he list his previous injury or the joint petition settlement. Coleman testified that he told the superintendent for Hardwick, Jim Musgrave, about his back injury, and that he did not have any physical limitations because of it, and said Musgrave told him to put down he had no restrictions. Coleman testified that he was in great physical shape before the second injury on September 13, 1982. He stated that he carried 20-foot pipe on his shoulder all day long. He testified that he felt fully recovered from the 1981 injury, and that he was not limited or restricted in any respect from performing his job at Hardwick Airmasters. He also testified that he was not taking any medication prior to the September 1982 injury, and often worked on Saturdays to get overtime pay. Finally, he stated that he was having no back or leg problems prior to the September 1982 injury. He further testified, as did a co-worker, that it was common knowledge that he had had back surgery. While Musgrave testified that he did not know about Coleman's previous back injury at any time prior to his subsequent injury and that he would not have hired him had he known, he also conceded that he had not looked at the application until after he had hired Coleman and Coleman had started to work. Musgrave did testify that he had observed the scar on Coleman's back, but Coleman told him that this had occurred when he was shot while in Vietnam. It is uncontroverted that Coleman had no trouble prior to his second injury in handling the workload at Hardwick Airmasters.

While the *Shippers* defense was raised at the second hearing before the Administrative Law Judge, he ruled that the issue was *res judicata* because the employer had stipulated in a previous hearing that the injury was compensable, but that even if it were not *res judicata*, the employer and SIF had failed to prove all three elements of the *Shippers* defense. This ruling was not appealed to the Full Commission, nor has it been appealed to our Court.

■ The Workers' Compensation Act provides for payments by SIF when a subsequently injured employee has a "previous disability or impairment." Ark. Stat. Ann. § 81-1313(i)(1) (Supp. 1985) provides in part:

> *Second Injury.* (1) The Second Injury Fund established herein is a special fund designed to insure that an employer employing a handicapped worker will not, in the event such worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in his employment. The employee is to be fully protected in that the Second Injury Fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined. It is intended that latent conditions, which are not known to the employee or employer, not be considered previous disabilities or impairments which would give rise to a claim against the Second Injury Fund.
>
> Commencing January 1, 1981, all cases of permanent disability or impairment where there has been previous disability or impairment shall be compensated as herein provided. Compensation shall be computed on the basis of the average earnings at the time of the last injury. If any employee who has a permanent partial disability or impairment, whether from compensable injury or otherwise, receives a subsequent compensable injury resulting in additional permanent partial disability or impairment so that the degree or percentage of disability or impairment caused by the combined disabilities or impairments is greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of combined disabilities or impairments, the employer at the time of the last injury shall be liable only for the degree or percentage of disability or impairment which would have resulted from the last injury had there been no pre-existing disability or impairment. After the compensation liability of the employer for the last injury, considered alone, which shall be no greater than the actual anatomical impairment resulting from said last injury, has been determined by an

administrative law judge or the Commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined by the administrative law judge or the Commission and the degree or percentage of disability or impairment which existed prior to the last injury plus the disability or impairment resulting from the combined disability shall be determined and compensation for that balance, if any, shall be paid out of a special fund known as a Second Injury Fund provided for in Section 47 (Ark. Stats. 81-1348).

. . .

■ The first two sentences of Ark. Stat. Ann. § 81-1313(i)(1) expressly state the purposes of the SIF statute to limit the employer's liability and simultaneously "fully protect" an already handicapped employee where he is subsequently injured on the job.

■ The Arkansas Supreme Court has directed this is a "special" fund and its solvency demands all its provisions be strictly complied with to further its limited and restricted purpose.

> "This fund, called the 'Second Injury Fund', is a limited and restricted fund . . . While Workmen's Compensation Acts are generally to be liberally construed the solvency of this special 'Second Injury Fund' requires that the provisions and requirements thereof be fully and strictly complied with. . . To hold otherwise would open this special fund to the point of insolvency and provide no benefit to those who do comply with its provisions and who are entitled to benefits thereunder."

*Arkansas Workmen's Compensation Commission* v. *Sandy*, 217 Ark. 821, 233 S.W.2d 382 (1950) (quoting from the opinion of the Commission).

■■ *Webster's Third World New International Dictionary* defines handicapped as ". . . a physical disability that limits the capacity to work." Disability has been defined under the Workers' Compensation Act as the "incapacity because of injury to earn, in the same or any other employment, the wages which

the employee was receiving at the time of the injury." Ark. Stat. Ann. § 81-1302(e) (Repl. 1976).

A person can be disabled if the injury has caused a physical loss or an inability to earn as much as he was earning when he was hurt. *Bragg* v. *Evans-St. Clair, Inc.*, 15 Ark. App. 53, 688 S.W.2d 956 (1985); *Terrell* v. *Austin Bridge Co.*, 10 Ark. App. 1, 660 S.W.2d 941 (1983). An injury must be more than an anatomical disability, but must be a disability in the "compensation sense" to be a previous disability, as defined in § 81-1302(e), requiring apportionment under the Workers' Compensation Act. *Cooper Industrial Products* v. *Worth*, 256 Ark. 394, 508 S.W.2d 59 (1974); *Henderson State University* v. *Haynie*, 269 Ark. 721, 600 S.W.2d 454 (Ark. App. 1980).

Appellant argues that the Commission erred in finding that Coleman had a prior disability or impairment pursuant to Ark. Stat. Ann. § 81-1313(i)(1), which rendered him a handicapped worker prior to his compensable injury on September 13, 1982. We have previously held in *Craighead Memorial Hospital* v. *Honeycutt*, 5 Ark. App. 90, 633 S.W.2d 53 (1982), and *Harrison Furniture* v. *Chrobak*, 2 Ark. App. 364, 620 S.W.2d 955 (1981), that while an impairment did not have to be job-related for apportionment to apply, it did have to be independently causing disability prior to the second injury and must have continued to cause disability after the second injury. Whether a person is "disabled" according to the statute is determined by his loss of wage earning capacity. Furthermore, in *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985), we held that "impairment" as used in Ark. Stat. Ann. § 81-1313(i)(1) means loss of earning capacity due to a non-work related condition.

In *Osage Oil* we rejected the contention that the SIF was liable even when the claimant had previously suffered only an anatomical impairment of some type, holding that the purpose of the Act is to encourage the employment of handicapped workers by providing that in the event of injury to those workers the employer will not have to pay for any more disability than actually occurred in his employment and not to provide employers with a windfall or subsidy. We reaffirm that position.

On appeal, this Court is required to review the evidence in the light most favorable to the Commission's decision

and to uphold that decision if it is supported by substantial evidence. Even when a preponderance of the evidence might indicate a contrary result, we affirm if reasonable minds could reach the Commission's conclusion. Questions of credibility and the weight and sufficiency of the evidence are matters for determination by the Commission. The Commission is better equipped by specialization and experience to analyze and translate evidence into findings than we are. *Bemberg Iron Works* v. *Martin*, 12 Ark. App. 128, 671 S.W.2d 768 (1984).

When guided by the above rules of law, we hold that there is no substantial evidence in the instant case to support the Commission's finding as there is no evidence that Coleman had a reduction of earning capacity. In order to be apportionable under the statute, the condition must have been independently causing a disability prior to the second injury and continue to do so after the second injury. *Id.* The condition must be "of a 'physical quality capable of supporting an award if the other elements of compensability were present.'" *Id.* at 324. We believe that it is clear appellee Coleman's injury of 1981 was not a disability or impairment and that, therefore, appellant SIF has no liability under the law. Since we reverse and remand on this point, we need not address appellant's second assignment of error.

Reversed and remanded for an entry of an order consistent with this opinion.

Reversed and remanded.

MAYFIELD, J., concurs.

GLAZE, J., dissents.

MELVIN MAYFIELD, Judge, concurring. I want to concur in this case in order to emphasize a point that I think is important. While it is true that two doctors gave the appellee anatomical disability ratings resulting from his first injury, no witness, including the appellee, testified that the first injury was causing the appellee any loss of earning capacity at the time he sustained the second injury. Also, the fact that the owner of the business where appellee was employed at the time of his second injury testified he would not have hired appellee had he known of his first injury is not substantial evidence that appellee's first injury was causing him any loss of earning capacity.

As we said in *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985), the purpose of Ark. Stat. Ann. § 81-1313(i) (Supp. 1985) is to encourage the employment of handicapped workers by providing that in the event of injury to those workers the employer will not have to pay for any more disability than actually incurred in his employment; *see Chicago Mill & Lumber Co.* v. *Greer*, 270 Ark. 672, 606 S.W.2d 72 (1980), and 2 Larson, *The Law of Workman's Compensation* § 59.31(a) (Rel. 32-2/ 81), but the purpose is not to give a windfall or subsidy to those employers.

In the instant case, I am in complete agreement with the following statement in the Second Injury Fund's brief:

> There are very few, if any, Arkansas workers who are completely free of *any* degree of medical or anatomical impairment to every part of their body. Thus, to adopt Appellee's contention and the decision of the Commission would warrant SIF exposure in virtually every Worker's Compensation case, bankrupt the SIF, and not serve to encourage the employment of truly handicapped workers.

TOM GLAZE, Judge, dissenting. I respectfully dissent. Although the majority claims it reviewed the evidence in the light most favorable to the Commission's decision, I suggest it actually gives no credence or weight to that evidence which supports the Commission's findings.

The Court holds no substantial evidence exists to support the Commission's finding, that Coleman's first injury independently produced some degree of permanent disability both before and after his last injury. It further concludes, I believe inaccurately, that there is no evidence that Coleman sustained a loss of earning capacity due to his first injury incurred while at Brown and Root, Inc.

By joint petition, Coleman settled his first injury claim with Brown and Root, Inc. for the sum of $12,000.00 plus medical expenses. While no specified anatomical loss was assigned Coleman in this petition (or the Commission's order approving it), two doctors, DeSaussure and Thomas, later gave Coleman a partial permanent disability rating which they related to his first injury. These ratings were assigned after the doctors treated and

evaluated him for his second injury, sustained at Hardwick Airmasters (Hardwick). Specifically, Dr. DeSaussure rated Coleman's partial permanent disability from the first injury at 15%, and increased it by 10% as a result of the second injury. Dr. Thomas, who performed surgery on Coleman, gave Coleman a partial permanent disability rating of 10% as a result of the first injury, and an additional 15% as a result of the second.

In this cause, Hardwick's owner testified he would not have hired Coleman if he had known of Coleman's preexisting condition. *See State of Arkansas, Second Injury Fund* v. *Girtman,* 16 Ark. App. 155, 698 S.W.2d 514 (1985) (wherein this Court reversed the Commission's decision that the Fund was liable, finding that there was no evidence that Girtman had ever been turned down for similar employment nor any evidence that his earning capacity had been reduced by his first injury). One must completely ignore Hardwick's testimony, and the medical evidence that establishes the permanency and compensability of Coleman's first injury, in order to hold—as did the majority—that Coleman did not suffer a loss of earning capacity or a disability or impairment required under Ark. Stat. Ann. § 81-1313(i)(1) (Supp. 1985). In sum, Coleman, after and as a result of his first injury, received compensation and medical benefits, and a partial permanent rating from two doctors—all of which caused Hardwick to say it would not have hired him if it had known of his earlier condition. Because I believe substantial evidence supports the Commission's finding, I would affirm.

The Fund raises a second issue on appeal: In order for the Fund to be held liable, must both the employer and employee have known of the prior disability or impairment? The Fund contends that under Ark. Stat. Ann. § 81-1313(i) (Supp. 1985), any conditions not known by the employer are latent conditions for which the Fund is not liable. Section 81-1313(i), in pertinent part, provides:

> It is intended that latent conditions, which are not known to the employee *or* employer, not be considered previous disabilities or impairments which would give rise to a claim against the Second Injury Fund. (Emphasis added.)

The Fund argues that, unless this is read as requiring both the employee *and* employer to know of the disability, the purpose

of the Second Injury Fund is not effectuated. I disagree, but since the majority fails to reach or address this point, I will give only a condensed version of the reasons for my disagreement.

The General Assembly, in § 81-1313(i), clearly stated that latent conditions should not be known by the employer *or* employee. In its ordinary sense, the word, 'or,' is a disjunctive particle that marks an alternative, generally corresponding to 'either,' as 'either this or that'; it is a connective that marks an alternative. *See Beasley* v. *Parnell*, 177 Ark. 912, 9 S.W.2d 10 (1928). The court in *Beasley* also remarked that when words have a settled, legal meaning, it is dangerous to conjecture that they were used in other than their legal signification. *Id.* at 917-18, 9 S.W.2d at 12. While "and" and "or" can be controvertible, it is well settled that such a substitution may not be made "unless the whole context of the statute requires, plainly and beyond question, that it be done in order to give effect to the intention of the Legislature." *Id.* at 917, 9 S.W.2d at 12.

Next, there are good reasons to suggest that the use of "or" in § 81-1313(i) effectuates the intent of the General Assembly. From my research, I am aware of only one state—in the absence of a statute requiring it—that requires actual employer knowledge of the employee's previous condition. *See McCoy* v. *Perlite Concrete Co.*, 53 A.D.2d 749 (1976); *Greco* v. *Greco Electric Co.*, 52 A.D.2d 1011, 383 N.Y.S.2d 684 (1976). Larson criticizes the New York rule as follows:

> The New York rule is defensible only if it is assumed that the exclusive purpose of the second injury principle is to encourage the hiring of the handicapped. This is, of course, the central purpose—but the principle also embraces the idea of achieving this result in a way that works hardship on neither the employer nor the employee. If one did not care about incidental hardship to the employee, one could do the hire-the-handicapped job by merely using an apportionment statute. And if one cares about the element of hardship to the employer, one could argue *the employer ought to be relieved of the cost of the preexisting condition, whether he knew of it or not, purely on the ground that the cost of this impairment, not having arisen out of this employment, should not in fairness fall upon this*

*employer.*

A more down-to-earth reason for disapproving the New York rule is that, as we have seen, it involves one of those distinctions that consume far more litigation time and cost than the policy at stake is worth.

2A Larson, Larson's Workmen's Compensation Law, § 59.33(e) (1981) (emphasis supplied).

The Fund was established "to insure that an employer employing a handicapped worker will not, in the event such worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker is in his employment. . . ." § 81-1313(i), *supra.* As is noted by Larson, the employer should be relieved of the cost of the employee's preexisting condition, regardless of whether or not the employer had knowledge of it. In sum, I would construe § 81-1313(i) just as it reads, requiring knowledge of the preexisting condition on the part of either the employee *or* employer, but not both.

Because I agree with the Commission, that the Fund is liable in this cause, I would affirm.