Bill GOLDEN *v.* WESTARK COMMUNITY COLLEGE
and Public Employee Claims Division

CA 96-1338 948 S.W.2d 108

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered July 2, 1997

[Petition for rehearing denied August 20, 1997.]

*Sexton & Fields, P.L.L.C.*, by: *William J. Kropp III*, for appellant.

*Nathan C. Culp*, for appellee Public Employee Claims Division.

ANDREE LAYTON ROAF, Judge. Bill Golden sustained a compensable injury while at work as a security officer for Westark Community College (Westark). Golden was ultimately assigned a 20% permanent partial disability to the body as a whole. However, the Commission found that Westark was entitled to offset all of Golden's permanent disability benefits pursuant to Ark. Code Ann. § 11-9-522(f) (Repl. 1996), since Golden was over sixty-five and drawing retirement benefits from Social Security. Golden raises four arguments in his appeal. He claims that (1) Ark. Code Ann. § 11-9-522(f) is unconstitutional in that it violates the Equal Protection Clauses of the state and federal constitutions; (2) the Age Discrimination in Employment Act promulgated by Congress preempts the application of Ark. Code Ann. § 11-9-522(f); (3) there is not substantial evidence to support the Commission's finding that he is entitled to only 20% permanent partial disability to the body as a whole; and (4) permanent partial disability benefits do not include money or benefits for permanent physical impairment. We affirm.

Golden worked as a security guard for Westark and was 67 years old at the time of his injury. His duties included walking or driving around the campus and ensuring the security of the buildings and facilities. He was required to walk up and down stairs and otherwise remain on his feet for extended periods of time.

In November 1993, when crossing a bridge connecting two buildings on the campus, Golden slipped on ice and injured his back. He underwent prolonged treatment as a result of the injury, and continued to suffer from pain and discomfort at the time of his

workers' compensation hearing. Golden's treating physician gave him a 5% physical impairment rating and permanent restrictions on the type of work he was allowed to perform. The restrictions effectively prevented him from performing his duties as a security guard, and he was subsequently terminated. Golden was sixty-nine years old at the time of his workers' compensation hearing and was receiving $575 per month in social security retirement benefits. Westark paid, without contest, Golden's medical expenses and temporary total disability through his healing period. However, Westark contested the extent of Golden's permanent disability, and denied payment of any permanent disability benefits because of the operation of Ark. Code Ann. § 11-9-522(f).

The administrative law judge (ALJ) found that Golden sustained a 20% impairment to his body as a whole (5% physical disability and 15% wage-loss disability). The ALJ recognized that Ark. Code Ann. § 11-9-522(f) provides for a dollar-for-dollar offset for anyone aged sixty-five or older who either is drawing or is eligible to draw benefits from a publicly or privately funded retirement plan. However, the ALJ found that Golden was entitled to receive disability payments of $119 for 22 and one-half weeks based on his 5% physical disability, reasoning that the statutory offset did not apply to benefits for physical impairment. The ALJ did not reach the issue of constitutionality of the statute. Golden appealed to the Commission, which reversed the judgment of the ALJ with respect to the finding that a portion of Golden's benefits should not be offset pursuant to Ark. Code Ann. § 11-9-522(f), and found the statute not violative of equal protection. Because Golden's social security benefits of $575 per month were greater than the amount of his permanent disability benefits, Golden was thus left without any benefits for his permanent partial disability.

### 1. Constitutionality of Ark. Code Ann. 11-9-522(f)

Golden first argues that Ark. Code Ann. § 11-9-522(f) is unconstitutional in that it violates the Equal Protection Clauses of the state and federal constitutions. Golden claims that the classification in the statute is arbitrary, unreasonable, and allows for persons similarly situated to be treated differently. Golden also alleges

that the classification of people found in the statute has no rational basis to any legitimate objective of the state.

Arkansas Code Annotated § 11-9-522(f) (Repl. 1996) was included among the major changes to the workers' compensation law enacted by the Arkansas General Assembly in 1993, and provides:

> (1) Any permanent partial disability benefits payable to an injured worker age sixty-five (65) or older shall be reduced in an amount equal to, dollar-for-dollar, the amount of benefits the injured worker received or is eligible to receive from a publicly or privately funded retirement or pension plan but not reduced by the employee's contributions to a privately funded retirement or pension plan.
>
> (2) The purpose and intent of this subsection is to prohibit workers' compensation from becoming a retirement supplement.

A companion statute, Ark. Code Ann. § 11-9-519(g) (Repl. 1996) provides for an identical offset with respect to permanent total disability benefits.

■■ Because age, unlike race or gender, is not a suspect or quasi-suspect classification, this court should apply a rational-basis test to determine if the statute violates equal protection. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314 (1976). It is well settled that an act by the legislature is entitled to a presumption of constitutionality. *American Trucking Ass'n v. Gray*, 288 Ark. 488, 707 S.W.2d 759 (1986); *Pulaski County Mun. Court v. Scott*, 272 Ark. 115, 612 S.W.2d 297 (1981). On appellate review, this court must presume that a statute is constitutional, and the party challenging the statute has the burden of proving otherwise. All doubts are resolved in favor of constitutionality. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996)(citing *Reed v. Glover*, 319 Ark. 16, 889 S.W.2d 729 (1994)).

■■ The Equal Protection Clause does not preclude all statutory classifications. *Cook v. State*, 321 Ark. 641, 906 S.W.2d 681 (1995); *Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994). Classifications are permitted that have a rational basis and are reasonably related to a legitimate government purpose. *McFarland v. McFarland*, 318 Ark. 446, 885 S.W.2d 897 (1994). The

role of the reviewing court is not to discover the actual basis for the legislation, but to consider whether any rational basis exists that demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government purpose. *Misskelley, supra; Streight v. Ragland,* 280 Ark. 206, 655 S.W.2d 459 (1983). This court must presume that the challenged classification will promote a legitimate state purpose if there is "any conceivable set of facts to uphold the law's rational basis." *Bosworth v. Pledger,* 305 Ark. 598, 810 S.W.2d 918 (1991).

Neither of Arkansas's two workers' compensation retirement offset statutes have faced a constitutional challenge since their enactment in 1993. However, a number of other states have considered similar statutes and have consistently upheld the constitutionality of the offset provisions. It is necessary to understand the underlying rationale for this legislation in order to properly consider the constitutionality of a particular statute. The premise for both state and federal offset legislation is the impropriety of duplicate benefits. This premise is based upon the idea that all wage-loss legislation is social legislation designed to restore to workers a portion of wages lost due to the three major causes of wage loss: disability, unemployment, and old age, and that, despite the cause, a worker experiences only one wage loss and should receive only one wage-loss benefit. *See* 9 LARSON'S WORKERS' COMPENSATION LAW, § 97.10. The primary aim of both federal and state offset legislation is to avoid duplicate benefits and, in addition, to designate the primary source for payment of a particular benefit.

With this premise in mind, the majority of jurisdictions have upheld the constitutionality of offset legislation against equal protection attacks, and even the two courts that have struck down their statutes have not done so based upon the lack of a legitimate governmental concern. These jurisdictions have found a variety of valid governmental purposes for the offset statutes. *See e.g. Brown v. Goodyear Tire & Rubber Co.,* 599 P.2d 1031 (Kan. App. 1979) (to prevent duplicate benefits); *Sasso v. Ram Property Management,* 431 So. 2d 204 (Fla. Dist. Ct. App. 1983) (to avoid "double dipping;" to reduce payment of fringe benefits due to age-related decline in productivity and physical abilities; to make

room in the job market for younger workers by inducing retirement of older workers; to reduce costs of insurance premiums to employers); *Harris v. State*, 843 P.2d 1056 (Wash. 1993) (to avoid duplicate payments; to reduce industrial insurance premiums; to save money for the state fund); *State v. Richardson*, 482 S.E.2d 162 (W.Va. 1996) (to preserve fiscal integrity of workers' compensation fund, to avoid duplicate benefits); *Case of Tobin*, 675 N.E.2d 781 (Mass. 1997)(coordination of benefits to prevent stacking of benefits; to reduce the cost of workers' compensation premiums for employers who pay into multiple-benefit systems).

■ It is clear that the Arkansas offset statutes are founded upon legitimate governmental concerns. The stated purpose of Ark. Code Ann. § 11-9-522(f) is "to prohibit workers' compensation from becoming a retirement supplement." Arkansas Code Annotated § 11-9-101 (Repl. 1996) provides that one of the primary purposes of the workers' compensation laws is "to emphasize that the workers' compensation system in this state must be returned to a state of economic viability." These purposes are simply a restatement of the goals of avoiding duplicate payments and of curtailing the cost of workers' compensation insurance, which have been found by other jurisdictions to be legitimate governmental concerns, and we do not disagree with their conclusions on this issue.

However, we must also determine whether the offset legislation is rationally related to these stated governmental purposes. Although two states have held that similar statutes are not, the two statutes held to be violative of equal protection provided for termination or reduction of benefits for totally disabled workers aged sixty-five or older, but not for partially disabled workers in the same age classification. However, both courts further held that the statutes in question would not be rationally related to the stated governmental purposes even if this discriminatory aspect of the legislation were eliminated. In *Industrial Claims Appeals Office v. Romero*, 912 P.2d 62 (Colo. 1996), the court found that a statute that provided for the outright termination of workers' compensation benefits to permanently totally disabled workers, aged sixty-five or older, without regard to their eligibility for social security or other retirement benefits, was not rationally related to the pur-

pose of preventing duplicate payments because social security retirement benefits and workers' compensation benefits do not serve the same purposes. The court also found that because the statute was based upon a "convenient perception that [persons aged sixty-five or older] receive retirement benefits," it impermissibly denied these persons equal protection of the laws for mere administrative convenience.

In *State ex rel. Boan v. Richardson*, 482 S.E.2d 162 (W.Va. 1996), the court differentiated between old-age social security benefits and permanent total disability benefits and also found that there was a "lack of commonality of purpose" for the two benefits. The court characterized workers' compensation benefits as payments in lieu of tort damages, and stated that the disability payments could not be considered a duplication of old-age social security benefits, which were earned retirement benefits. The West Virginia statute, which provided for a reduction in the permanent total disability benefits for persons receiving social security old-age benefits was thus held not rationally related to the legitimate governmental purpose of avoiding duplicate benefits.

Although Golden makes similar arguments to those advanced in *Romero* and *Richardson*, we must agree with the remaining jurisdictions that have found a rational relationship between legitimate governmental purposes and the age classification contained in the offset statutes.

■ ■ We cannot say that the classification in Ark. Code Ann. § 11-9-522(f) between those workers aged sixty-five and older, who are receiving or who are eligible to receive public or private retirement benefits, and all other workers, is arbitrary and capricious, for which there is no legitimate government purpose. *See Reed v. Glover*, 319 Ark. 16, 889 S.W.2d 729 (1994). Although this classification undoubtedly will exclude some persons under sixty-five who may also be eligible for retirement benefits, if there is *any* rational basis for the disparate treatment, the classification must be upheld. *Allen v. State*, 327 Ark. 350, 939 S.W.2d 270 (1997).

■ ■ Moreover, a court will not strike down a classification merely because it is underinclusive. *Medlock v. Leathers*, 311

Ark. 175, 842 S.W.2d 428 (1992). We conclude that the classification contained in the Arkansas statute is based upon a reasonable, not arbitrary, distinction. The Legislature undoubtedly considered, as have other jurisdictions, that sixty-five is the age at which most workers will be eligible for retirement benefits.

■ Furthermore, the Arkansas Supreme Court has recognized the social nature of workers' compensation legislation in *Corbitt v. Mohawk Rubber Co.*, 256 Ark. 932, 511 S.W.2d 184 (1974), where the court stated, "[t]he Workmen's Compensation Act is based largely on the social theory of providing disabled employees support and preventing their destitution." *Corbitt*, 256 Ark. at 935, 511 S.W.2d 186. We thus cannot say that the decision to offset permanent disability benefits at age sixty-five, for those disabled workers who are eligible to receive retirement benefits, is arbitrary and capricious.

### 2. Preemption by Federal Law

Golden also argues that the Age Discrimination in Employment Act (ADEA) promulgated by Congress preempts the application of Ark. Code Ann. § 11-9-522(f).

■ The doctrine of federal preemption is based upon the Supremacy Clause in Article VI of the United States Constitution. Under the Supremacy Clause, state laws that "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution" are invalid. *Gibbons v. Ogden*, 22 U.S. 1, 211 (9 Wheat.) (1824); *Lawson v. Sipple*, 319 Ark. 543, 893 S.W.2d 757 (1995). The doctrine involves a congressional intent to supplant state authority in a particular field. *Jones v. Rath Packing Co.*, 430 U.S. 519 (1977).

■ The test for determining whether a state law would be preempted is based upon four factors: whether Congress expressed a clear intent to preempt state law; whether Congress occupies the field so as to leave no room for the states to supplement; whether compliance with both the state and federal laws is impossible; and whether the state law stands as an obstacle to Congress's objective or purpose. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691 (1984).

■ Absent express preemptive language, congressional intent to supersede state law may be implied. *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 834 S.W.2d 136 (1992). Implied preemption can occur: (1) when the scope of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the state to act, (2) when the state and federal law actually conflict, (3) when compliance with state and federal law is physically impossible, and (4) when the state law stands as an obstacle to the accomplishment of the full objectives of Congress. *Ciba-Geigy*, *supra. See, e.g., Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947).

■ However, the reviewing court begins with the assumption that the historic police powers of the states are not to be superseded by a federal act unless that is the clear and manifest purpose of Congress. *Rice, supra.* The burden is on the moving party to prove that Congress intended to preempt state law. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984).

Golden argues that the ADEA preempts Ark. Code Ann. § 11-9-522(f) from operation, because the Act prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment" on the basis of age. Golden asserts that disability benefits fall within the meaning of the ADEA and thus, any action by a private employer or state government which compels older workers to substitute retirement benefits for disability benefits is precluded.

■ However, the ADEA contains no clear expression of the intent to preempt the state's administration of workers' compensation benefits. We also cannot say preemption may be implied to preclude the state-enacted offset because the ADEA prohibits only an employer from discriminating against individuals. We agree with the Supreme Judicial Court of Massachusetts that the ADEA "concerns age-based discrimination against employees resulting from activities within the employer's control." *Tobin*, 675 N.E.2d at 786.

### 3. Substantial Evidence

Golden also argues that there is not substantial evidence to support the full Commission's finding that he is entitled to only 20% permanent partial disability to the body as a whole. We find no merit in this argument.

Golden's doctor assigned him a physical impairment rating of 5% and released him with permanent restrictions. Taking into consideration his age, education, and physical restrictions, the ALJ and the Commission found that he was also entitled to a 15% impairment rating attributable to his decreased earning capacity. Golden argues that his age, education, and physical restrictions require a far greater award.

Golden was sixty-nine years old at the time of the hearing, and had a tenth-grade education. He testified that he had applied for jobs since his injury, because he was required to do so to qualify for unemployment, but that he applied "cold turkey" where no positions were advertised. Golden further testified that his work history included employment as a salesman, as owner and operator of a pest control company for over thirty years, and truck driver.

Arkansas Code Annotated § 11-9-522(b)(1) (Repl. 1996) provides that the Commission may consider in addition to the percentage of permanent physical impairment, "such factors as . . . age, education, and work experience," in considering claims for permanent partial disability benefits in excess of the employee's permanent physical impairment. Here, the Commission awarded Golden an additional 15% benefit for reduction in his wage-earning capacity, in addition to the 5% physical impairment assigned by his treating physician. The Commission found that Golden had sustained a 15% impairment to his earning capacity "after consideration of [Golden's] restrictions, along with [his] physical limitations, his age, education, and previous work experience." Golden's age and lack of education, while factors to be considered, do not constitute a disability. Although Golden's physical restrictions prevent him from working in a job where he must lift heavy items or do a lot of bending or stooping, we cannot say that there was not substantial evidence to uphold the finding of the Commission that he was entitled to only a 20% disability rating.

Moreover, because of our resolution of Golden's constitutional argument, even a 100% disability rating would not allow Golden any recovery because it would not increase the amount of his weekly benefits, but would only extend the period of payment. *See* Ark. Code Ann. § 11-9-522(a) (Repl. 1996).

### 4. Physical Impairment

Golden finally contends that permanent partial disability benefits do not include money or benefits for permanent physical impairment. He argues that the finding of the Commission that loss in earning capacity and physical impairment are two components of permanent partial disability which can exist with or without each other was in error. Golden argues that the definition of "disability," found at Ark. Code Ann. § 11-9-102(9) does not include actual physical disability or impairment and that it is not otherwise defined. Therefore, he asserts that the implication is that benefits for permanent physical impairment are not considered permanent partial disability benefits and that they should not be treated as such.

In declining to adopt this position, the Commission noted that, in Arkansas, a worker is considered "disabled" if he suffers an impairment to his ability to earn wages, or if he suffers an anatomical impairment. The Commission noted that "disability," within the meaning of the workers' compensation law, includes loss of use of the body to earn substantial wages, as well as anatomical impairment. *Glass v. Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961); *Oller v. Champion Parts Rebuilders*, 5 Ark. App. 307, 635 S.W.2d 276 (1982). A person can be disabled if the injury has caused physical loss or an inability to earn as much as he was earning when he was hurt. *Fund v. Coleman*, 16 Ark. App. 188, 699 S.W.2d 401 (1985); *Bragg v. Evans-St. Clair, Inc.*, 15 Ark. App. 53, 688 S.W.2d 956 (1985). *See also Terrell v. Austin Bridge Co.*, 10 Ark. App. 1, 660 S.W.2d 941 (1983).

Consequently, although the definition of "disability" fails to include any specific reference to physical impairment, Arkansas law clearly indicates that both physical and earning impairment are components of "disability." Moreover, in making

his constitutional argument, Golden states that "[p]ermanent partial disability benefits are, as the Commission suggests, based on two components. The first is physical anatomical impairment." This assertion by Golden, although it serves to advance his constitutional argument, seems to concede the very point he now argues. We thus conclude that the Commission did not err in finding that physical impairment is included within the definition of disability.

 Although we declare that Ark. Code Ann. § 11-9-522(f) does not violate Bill Golden's right to equal protection under the laws, we may only consider the question of the constitutionality of this statute. If indeed this statute is unfair to older workers, many of whom must continue to work to supplement their social security retirement benefits, this is a matter for the Legislature to address, not this court. As our supreme court has often said:

> the question of the wisdom or expediency of a statute is for the Legislature alone. The mere fact that a statute may seem unreasonable or unwise does not justify a court in annulling it, as courts do not sit to supervise legislation. Courts do not make the law; they merely construe, apply, and interpret it.

*S.W. Bell Tel. Co. & Wheeler v. Roberts*, 246 Ark. 864, 868, 440 S.W.2d 208, 210 (1969)(quoting *Newton County Republican Cent. Comm. v. Clark*, 228 Ark. 965, 311 S.W.2d (1958)).

Affirmed.

JENNINGS, BIRD, and AREY, JJ., agree.

ROBBINS, C.J., and NEAL, J., dissent.

JOHN B. ROBBINS, Chief Judge, dissenting.

> Equal protection of the laws is something more than an abstract right. It is a command which the State must respect, the benefits of which every person may demand. Not the least merit of our constitutional system is that its safeguards extend to all — the least deserving as well as the most virtuous.

*Hill v. Texas*, 316 U.S. 400, 406 (1942). Mr. Bill Golden will have good cause to wonder just why he and other Arkansas workers

who choose to continue working after attaining age sixty-five somehow fall outside our constitutional safeguards as were so eloquently stated by Justice Harlan Stone.

The majority opinion fairly sets forth the facts giving rise to this appeal, but so that there will be no misunderstanding about what has been done to Mr. Golden, I will briefly recap his situation. Mr. Golden chose to continue working after age sixty-five, perhaps in large part because his social security pension benefits were only $575 per month, which is below the poverty level set by the federal poverty guidelines. He was injured on his job at age sixty-seven, and the Workers' Compensation Commission determined that he was permanently disabled to the extent of 20% of his body as a whole. A younger worker at the same wage level and with the same disability rating would have been entitled to receive $119 per week for ninety weeks as compensation for such disability. But because Mr. Golden was receiving $575 per month in social security old-age benefits, not social security disability benefits, Ark. Code Ann. § 9-11-522(f) (Repl. 1996) deprives him of any workers' compensation benefits at all for his permanent disability.

While I have some difficulty with the notion that the federal Age Discrimination in Employment Act prevents employers from discriminating against employees on the basis of age yet does not bar a state from enacting a workers' compensation law that does so, I can concur in the majority's disposition of all points on appeal except the constitutionality issue. The majority holds that Ark. Code Ann. § 11-9-522(f) does not violate the equal protection provisions of the federal and Arkansas constitutions. I respectfully disagree.

I acknowledge that the right to receive workers' compensation benefits is not a fundamental right, nor is a class of workers over the age of sixty-five a suspect classification. Consequently, I agree with the majority that an equal protection analysis of the subject statute requires application of the rational-basis test, *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307 (1976), and that this legislation is entitled to a presumption of constitutionality. *Amer. Trucking Assn. v. Gray*, 288 Ark. 488, 707 S.W.2d 759

(1986); *Lambert v. Baldor Electric*, 44 Ark. App. 117, 868 S.W.2d 513 (1993). As stated in *Corbitt v. Mohawk Rubber Co.*, 256 Ark. 932, 935, 511 S.W.2d 184, 186 (1974), quoting from *Reed v. Reed*, 404 U.S. 71 (1971), a classification must be reasonable, not arbitrary, and must rest upon some ground of deference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike.

An essential step in this analysis is to ascertain the governmental purpose or objective sought to be served by the legislation. *Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994); *Corbitt, supra,* citing *Dunn v. Blumstein*, 405 U.S. 330 (1971). The majority identifies two such purposes that are served by Act 796 of 1993, which enacted § 11-9-522(f). Both are expressly set forth in Act 796. One of these pertains specifically to § 11-9-522(f) and provides that it is intended "to prohibit workers' compensation from becoming a retirement supplement." Ark. Code Ann. § 11-9-522(f)(2). The other governmental objective stated in Act 796 as one of its primary purposes is "to emphasize that the Workers' Compensation Commission system in this state must be returned to a state of economic viability." Ark. Code Ann. § 11-9-101(b) (Repl. 1996).

Having identified the governmental purposes of Act 796, the next step in our analysis is whether § 11-9-522(f), which imposes an offset or reduction of workers' compensation benefits, dollar-for-dollar, for any social security old-age benefits or other retirement benefits received by a worker over the age of sixty-five, is rationally related to these governmental objectives, or as stated in *Corbitt,* whether § 11-9-522(f) has a fair and substantial relation to the objects of this legislation.

*Prohibition of workers' compensation benefits from becoming a retirement supplement.* The Commission construed this objective to mean that § 11-9-522(f) is intended to prevent collection of "overlapping awards." The majority opinion similarly characterizes the object to be "avoiding duplicate payments." My difficulty with this characterization is that it confuses apples with oranges, i.e., workers' compensation disability benefits are not the same as social security old-age benefits or other retirement benefits.

Therefore, workers' compensation disability payments would never be an overlapping award or duplicate payment of social security retirement benefits.

As noted by the West Virginia Supreme Court of Appeals, disability awarded under workers' compensation is part of a comprehensive plan designed to rectify the results of an injury in the work place. *State v. Richardson*, 482 S.E.2d 162 (W.Va. 1996). Payments to injured workers are in lieu of such elements of damages for common law tort as lost wages, lost earning capacity, reimbursement of past and future medical expenses, past and present pain and suffering, emotional distress, and other factors. *Id.* The injured worker's right to seek workers' compensation disability benefits has been substituted for his cause of action against the negligent employer and this remedy has become his exclusive remedy. Ark. Code Ann. § 11-9-105.

Social security old-age insurance benefits do not serve the same purpose as workers' compensation benefits. *Industrial Claims Appeals Office v. Romero*, 912 P.2d 62 (Colo. 1996). Social security constitutes retirement benefits that are earned by continued employment in the work force and attainment of the age of sixty-two or sixty-five or older. *State v. Richardson, supra.* Employers and employees contribute to the system and the benefits are, in effect, additional compensation paid by insurance as a result of having worked some period of time at some average taxable salary, except as the payments reflect the recipient's wage contributions to the system. *Id.* Those benefits are neither designed nor intended to compensate for a workplace injury or replace elements of damage that might be recovered in a common-law tort action for such an injury.

Furthermore, it should be noted that a person receiving social security old-age benefits may also be employed and earn additional wages, as Mr. Golden was doing in this case at the time of his injury, without any offset against these old-age benefits, limited in amount however until age seventy. We have held that the Commission erred in denying an injured worker disability benefits, specifically wage loss, solely because the worker was receiving old-age social security benefits. *Curry v. Franklin Elec.*,

32 Ark. App. 168, 798 S.W.2d 130 (1990). Although *Curry* was decided prior to the 1993 act, it is notable that in that opinion we cited with approval *Meyers v. Walsh*, 12 A.D.2d 371, 211 N.Y.S.2d 590 (1961), and quoted from that opinion as follows: "The fact that claimant ceased work and elected to receive social security benefits is not decisive of his right to compensation nor does such action, of itself, justify the finding that the claimant has removed himself from the labor market. Recipients of social security are permitted to work within certain monetary limitations."

Mr. Golden's circumstance is not at all the situation that we addressed in *Cook v. Aluminum Co. of Amer.*, 35 Ark. App. 16, 811 S.W.2d 329 (1991), where we found a legitimate governmental objective was served in the statute that prevented an employer from being liable for benefits for wage loss while the injured worker was actually *earning* wages equal to the wages he was earning at the time of his injury. Mr. Golden's workers' compensation disability benefits were reduced because of old-age insurance benefits, not *earned* wage income. Consequently, a governmental objective to avoid or prohibit duplicate or overlapping benefits is not served by reducing workers' compensation disability benefits because of social security old-age retirement benefits received by the injured worker.

*Returning the workers' compensation system to a state of economic viability.* I acknowledge that § 11-9-522(f) does serve to reduce the cost of workers' compensation insurance and is a legitimate governmental purpose. However, § 11-9-522(f) is not rationally related to achieving this purpose because it reduces, and in the case of Mr. Golden completely extinguishes, the right to disability benefits for injured workers who are age sixty-five or older and who are receiving social security retirement benefits, but yet does not similarly reduce the workers' compensation benefits of an injured worker who is age sixty-two, sixty-three, or sixty-four, and who also receives social security retirement benefits. Nor would the workers compensation disability benefits of an injured worker age sixty-five, or older, be reduced by any sum if the injured employee was for some reason not entitled to receive social security retirement benefits. This disparate treatment of similarly

situated individuals violates the equal protection guarantees of the state and federal constitutions and should not be permitted.

Finding that a law serves a governmental interest does not necessarily equate to constitutionality. Workers' compensation insurance premiums could be reduced by legislation that denied benefits to left-handed or blue-eyed injured employees. However, simply because a governmental objective or purpose is served does not preclude consideration of a statute's basic fairness. A review of relevant cases reveals that at the heart of equal protection analysis is a standard of reasonableness. *Reed v. Reed, supra,* and *Corbitt v. Mohawk Rubber Co., supra,* (a classification must be *reasonable,* not arbitrary); *Misskelley v. State,* 323 Ark. 449, 915 S.W.2d 702 (1996) (classification must be *reasonably* related to a legitimate governmental purpose); *Hamilton v. Hamilton,* 317 Ark. 572 879 S.W.2d 416 (1994) (statutory classification must be *reasonably* related to the purpose of the statute); *McFarland v. McFarland,* 318 Ark. 446, 885 S.W.2d 897 (1994) (even if statute bears a rational relationship to a state interest, the distinction drawn between the classes *must be reasonable*); *Carney v. State,* 305 Ark. 431, 808 S.W.2d 755 (1991) (statute must not be *unreasonable* or arbitrary); *Hamilton v. Jeffery Stone Co.,* 25 Ark. App. 66, 752 S.W.2d 288 (1988) (a classification must be *reasonable,* not arbitrary) *Holland v. Willis,* 293 Ark. 418, 739 S.W.2d 529 (1987) (classification must be *reasonably* related to the purpose of the statue). How in good conscience can it be contended that a law that reduces or precludes workers' compensation disability benefits to an injured worker over the age of sixty-five is reasonable? It is unreasonable to deny a sixty-five-year-old Arkansan who is injured on his job the right to be compensated for his disability simply because, after working several years and contributing social security taxes, his old-age insurance benefits exceed the weekly disability benefit rate that he would otherwise be entitled to receive.

While a determination of whether a statute is constitutional should never be taken lightly, especially given the strong attendant presumption of validity, I am convinced that the statute before the court fails to pass constitutional muster. Section 9-11-522(f) discriminates against and demeans the value of thousands of older Arkansans who choose to remain in the work force. If such a

worker suffers a permanent disability and his social security benefits exceed the permanent disability benefits that a younger worker would receive and to which this older worker would otherwise be entitled, the older worker receives nothing and he has no redress. He is left without compensation for his disability, either in tort or under the workers' compensation system. Relegation to second-class status as a member of Arkansas' work force is not fair, it is not reasonable, and it does not pass the test of not being arbitrary or capricious. Such a statute should not be found constitutional by this court. I would reverse and remand this case for an award of benefits.

I am authorized to state that Judge NEAL joins in this opinion.