PULASKI COUNTY MUNICIPAL COURT,
David HALE, its Judge, et al *v.*
Elizabeth A. SCOTT

81-11                                          612 S.W. 2d 297

Supreme Court of Arkansas
Opinion delivered March 4, 1981

116

*Wilbur C. Bentley*, Pros. Atty., Sixth Judicial Circuit; *Larry C. Page*, Deputy Pros. Atty.; *James L. Sloan; Steve Clark*, Atty. Gen., and *R. B. Friedlander*, Asst. Atty. Gen., for appellants and cross-appellees.

*Robert R. Cortinez*, for appellee and cross-appellant.

FRANK HOLT, Justice. Appellee was charged in Pulaski County Municipal Court with a traffic violation. She moved to dismiss for lack of jurisdiction, asserting that Act 123, Ark. Acts of 1979 (Ark. Stat. Ann. § 22-759 et seq. [Supp. 1979]), which established the court, is unconstitutional. That court declined to rule on the motion and the circuit court granted her petition for writ of certiorari. Since the validity of a state statute was questioned, the appellant attorney general was required to intervene. Ark. Rules of Civ. Proc., Rule 24 (a), (b) and (c) and Ark. Stat. Ann. § 34-2510 (Repl. 1962). The circuit court ruled the provisions of the act establishing a county municipal court are valid pursuant to Art. 7, § 1 Arkansas Constitution (1874). However, that portion of the Act authorizing the county judge to appoint the judge of that court is unconstitutional

by virtue of Art. 7, § 50 of our Constitution and Amendment 29, which require vacancies in an office to be filled by appointment of the governor pending the next general election. By direct appeal appellants challenge the court's finding that the appointment provision is unconstitutional; by cross-appeal appellee questions the court's finding that the county municipal court was validly created.

We first consider the issue of the constitutionality of the court. Appellee, cross-appellant, contends our Constitution does not grant the legislature the power to authorize the creation of a county municipal court. We first observe certain fundamental rules in construing the validity of a legislative act. In *The State* v. *Chester Ashley et al*, 1 Ark. 513 (1839), we said: "The legislature . . . can exercise all power that is not expressly or impliedly prohibited by the consti- tution; for whatever powers are not limited or restricted, they inherently possess as a portion of the sovereignty of the State." In *Baratti* v. *Koser Gin Company*, 206 Ark. 813, 177 S.W. 2d 750 (1944), we held:

> . . . [T]hat the constitution of this state is not a grant of enumerated powers to the Legislature, not an enabling, but a restraining act . . . and that the Legislature may rightfully exercise its powers subject only to the limitations and restrictions of the Constitution of the United States and of the State of Arkansas . . . that an act of the Legislature is presumed to be constitutional, and will not be held by the courts to be unconstitutional unless there is a clear incompatibility between the act and the Constitution; and further, that all doubt on the question must be resolved in favor of the act . . . the elementary rule is that every reasonable construction must be resorted to in order to save the statute from unconstitutionality.

See also *State* v. *Moore*, 76 Ark. 197 (1905). As recently as *Hooker* v. *Parkin*, 235 Ark. 218, 357 S.W. 2d 534 (1962), we reiterated that "the Legislature (which is made up of the people's elected representatives and spokesmen) has abso- lute power and authority to legislate in all fields unless

prohibited or restricted from doing so by the State Constitution . . ."

With these rules in mind, we consider both aspects of the questioned validity of the statute in question. Art. 7, § 1 provides:

> The judicial power of the State shall be vested in one Supreme Court, in circuit courts, in county and probate courts, and in justices of the peace. The *General Assembly* may also vest such jurisdiction as may be deemed necessary in *municipal corporation courts*, courts of common pleas, where established, and, when deemed expedient, may establish separate courts of chancery. (Italics supplied.)

Appellee, cross-appellant, interprets this provision to mean that the General Assembly is empowered only to establish municipal corporation courts, courts of common pleas and chancery. She buttresses her argument pointing out that Art. 7, § 43 of our Constitution speaks only of "corporation courts for towns and cities" in its provisions:

> Corporation courts for towns and cities may be invested with jurisdiction concurrent with justices of the peace in civil and criminal matters, and the General Assembly may invest such of them as it may deem expedient with jurisdiction of any criminal offenses not punishable by death or imprisonment in the penitentiary, with or without indictment, as may be provided by law, and, until the General Assembly shall otherwise provide, they shall have the jurisdiction now provided by law.

However, appellants assert that Art. 7, § 1, which provides for our judicial system, does not so limit corporation courts, but speaks of "municipal corporation courts," with the right of the General Assembly to vest such jurisdiction in them as it deems necessary. Thus, they argue, the framers contemplated the term "municipal corporation courts" to encompass more than just "courts for towns and cities."

We have long recognized that counties are municipal corporations. *Eagle et al* v. *Beard et al*, 33 Ark. 497 (1878); *Roberts, Co. Judge* v. *Watts, Co. Clerk*, 263 Ark. 822, 568 S.W. 2d 1 (1978); and *City of Hot Springs* v. *Gray*, 215 Ark. 243, 219 S.W. 2d 930 (1949). In the latter case we said:

> We have many times announced the rule that: ' "Counties, cities, and towns, * * * are municipal corporations, created by the authority of the Legislature; and they derive all their powers from the source of their creation, except where the Constitution of the State otherwise provides." '

Furthermore, we have also recognized the validity of a legislative act which gives municipal courts countywide jurisdiction, stating that "[n]o limitation is found in the Constitution upon the power of the Legislature to vest jurisdiction in municipal courts, when established, beyond the geographical limits of municipalities. Nor can it be said that there exists any policy or sound reason for restricting the jurisdiction to such geographical limits." *State ex rel. Wm. L. Moose* v. *Woodruff*, 120 Ark. 406, 179 S.W. 813 (1915).

Consequently, we hold that Art. 7, § 1, which empowers our General Assembly with the authority to create municipal corporation courts, includes the authority to create county municipal corporation courts. Additionally, nowhere in our Constitution is the establishment of the court in question prohibited either expressly or impliedly. Therefore, we affirm the circuit court's finding that the act creating the court in question is constitutional.

Since we hold the court was validly created by the legislature, the remaining issue is the validity of the manner in which the judge of that court is selected. The act authorizes appointment by the county judge. Appellee, asserting this is impermissible, relies upon Art. 7, § 50 and Amendment 29, § 1. Section 50, relied on by the trial judge, provides:

> All vacancies occurring in any office provided for in

this article shall be filled by special election, save that in case of vacancies occurring in county and township offices six months and in other offices nine months, before the next general election, such vacancies shall be filled by appointment of the Governor.

Amendment 29, § 1 provides:

Vacancies in the office of United States Senator, and in all elective state, district, circuit, county, and township offices except those of Lieutenant Governor, Member of the General Assembly and Representative in the Congress of the United States, shall be filled by appointment of the Governor.

In *McCraw* v. *Pate*, 254 Ark. 357, 494 S.W. 2d 94 (1973), we held that "[i]t is abundantly clear that Amendment 29 completely eliminated and superseded section 50 of Art. 7 . . ." Clearly, Amendment 29 provides only for the manner in which a vacancy is filled in an elective office. It does not appear our Constitution requires the position here to be an elective one. As stated previously, our Constitution is not a grant of enumerated powers to the legislature, rather it is a restraining act only. If the legislature has the power to create the office under the provisions of the Constitution, it is not unreasonable to conclude it also has the power to provide the manner of filling that office, its tenure, and all other necessary provisions to make the organization of the court complete and effective. The question of whether the office should be filled by appointment or election addresses itself to the wisdom of our legislature.

Applying the rules of statutory construction, previously discussed, the writer of this opinion, the Chief Justice and Justice Hays are of the view that the legislative act providing for the appointment of the judge of the court by the county judge is a valid exercise of its authority. Justices Purtle and Dudley are of the contrary view. Justices George Rose Smith and Hickman do not reach this issue since they regard the court as being invalidly created. Consequently, a majority fails to agree with respect to the validity of the appointment,

which results in the affirmance of the trial court's interpretation that the appointment is invalid.

Affirmed on direct appeal and on cross-appeal.

ADKISSON, C.J., concurs; PURTLE and DUDLEY, JJ., concur in part and dissent in part; GEORGE ROSE SMITH and HICKMAN, JJ., dissent.

RICHARD B. ADKISSON, Chief Justice, concurring. I join the opinion written by Justice Holt. I concur merely to state that we do not reach the issue of whether the judge of one Pulaski County municipal court with county-wide jurisdiction may come into office by appointment, as here, while others must be elected.

ROBERT H. DUDLEY, Justice, concurring in part, dissenting in part. I concur in finding the act creating the Pulaski Municipal Court is valid, and that the manner of selection of the judge, whether elective or appointive, is a valid exercise of legislative authority. However, the General Assembly may not exercise that authority in a manner which might not afford a litigant an impartial tribunal, and that has occurred in § 3 (a) of this act.

Due process of law, as guaranteed by the Fourteenth Amendment, requires that a litigant be afforded a trial by an impartial court. This is not a new concept, but rather is a bedrock principle dating back, at the least, to 1610 when Lord Coke stated the common law maxim that no man can be a judge of his own case, which is an expression of this principle, and thus voided an act of Parliament tending to contravene it. See *Bonham's Case*, 8 Coke 1136, 77 Eng. Reprint 646 (1610).

We have held that a litigant is denied due process of law when subjected to trial before a justice of the peace who receives fees and costs only when the accused is convicted. *Doty* v. *Goodwin*, 246 Ark. 149, 437 S.W. 2d 233 (1969).

The Supreme Court of the United States most recently discussed the issue of trial before a disinterested and impar-

tial judicial officer in *Ward* v. *Monroeville*, 409 U.S. 57 (1972). In that case the Mayor of Monroeville, Ohio, while sitting as a traffic judge, found Ward guilty of two traffic offenses and fined him $50 for each offense. The Ohio Court of Appeals and Ohio Supreme Court affirmed the convictions. The United States Supreme Court reversed because the mayor's responsibility for village finances, a major part of which was derived from fines and costs imposed by the mayor's court, made the trial a violation of the Fourteenth Amendment's due process guaranty of a trial before a disinterested and impartial judicial officer. The Court held that the right to an appeal does not cure the defect as an accused is entitled to a neutral and detached judge in the first instance.

There is no evidence in this case indicating the amount of revenue which Pulaski County expects to receive from this municipal court. However, we do take notice of the most recent accounting of Arkansas courts by the Judicial Planning Council, a committee appointed by this court. That accounting is published in *The Financing of Arkansas Courts* (1980). Table 21 reflects that in 1978 municipal courts in Arkansas produced revenues of $11,266,938 at a cost of $1,577,000. Table 18 states that $4,471,851 of revenues were collected at municipal levels in Pulaski and Perry Counties in 1978. Municipal courts produce substantial amounts of revenue and § 4 of the statute in dispute provides that Pulaski County shall receive all revenue produced by this court.

The county judge has executive responsibility for the financial affairs of the county. Municipal courts are substantial revenue producing courts. Clearly the county judge could not sit as a municipal court judge, for the reason stated in *Ward* v. *Monroeville*, supra at 60:

> Plainly that "possible temptation" may also exist when the Mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the Mayor's court.

Section 3 (a) of the act in question gives to the county

judge the power to appoint the municipal judge. The office of county judge in Arkansas is comparable to that of mayor in Ohio, as both are the chief financial officers of their respective governmental units.

If the county judge cannot sit as a judge on this type of court, he should not be given the power to decide who does sit. The impartiality of the county judge could be so diminished that he or she might not act in a disinterested fashion in selecting the person to serve in a judicial capacity. A maxim of common law is no one can do that indirectly which cannot be done directly.

We must anticipate the future effect this type of appointment procedure would have on our justice system. If a mayor or a county judge becomes dissatisfied with the revenues produced by a fair and just municipal judge, that mayor or county judge could ask his legislator to pass, by "local courtesy," a bill giving him the power to appoint the municipal judge. Given this set of circumstances, at what stage would our municipal courts become more interested in revenue production than in justice? Litigants in this State might not be afforded the impartial and disinterested judge which they are guaranteed by the Fourteenth Amendment.

While neither side of the present case has argued the issue of the impartiality of a court, it is so fundamentally important that I have written this opinion without benefit of briefs and arguments on the subject. Obviously, this is not the preferable way to develop an issue and to write an opinion. The dangers are apparent. However, the practical application of the plurality opinion is so discomforting that I have decided it is best to hand this opinion down, even without the issues having been fully developed in the traditional adversary manner.

This opinion is involved with legal principles only. There is no hint of impropriety by any of the individuals involved in this particular case.

I find all sections of the act valid except § 3 (a) providing for appointment by the county judge. As the county judge

had no power to make the appointment, a vacancy exists and should be filled under the general laws of this state.

I am authorized to state that Mr. Justice Purtle joins in this opinion.

DARRELL HICKMAN, Justice, dissenting. The majority has found constitutional an act creating a new court, a "County Municipal Court." This is not only contrary to our constitution but a breach of faith with those precedents that have interpreted our constitution differently.

There is no such thing as a "County Municipal Court." Only by a tortuous route can a case be made for such a creature. My examination of the problem does not start and end with Section 1, Article 7, of the Judicial Article, but encompasses all fifty-two sections of that article and other sections of the constitution that are pertinent.

The majority's simplistic approach, which is that anything the constitution does not forbid is proper, is essentially one that avoids interpreting the constitution. That is not the only test we should apply. It is the duty of this court to construe constitutional sections so that the instrument as a whole is harmonious, if at all possible. *Ex Parte King*, 141 Ark. 213, 217 S.W. 465 (1919). The constitution must be considered as a whole and to interpret any part of it we must read that part in the light of other provisions relating to the subject. *Chesshir* v. *Copeland*, 182 Ark. 425, 32 S.W. 2d 301 (1930). The constitution must be construed according to the sense of the terms used and the intentions of its authors. *State* v. *Scott*, 9 Ark. 270 (1849). These are the rules that we must follow when we read the constitution.

Beginning with Section 1 of Article 7 we find that eight courts are mentioned: A supreme court, circuit courts, county and probate courts, justices of the peace, municipal corporation courts, courts of common pleas, and chancery courts. No other courts can be created by the General Assembly. We have held that beyond these enumerated courts the General Assembly does not have the power to

create courts. *Ward School Bus Mfg. Co.* v. *Fowler*, 261 Ark. 100, 547 S.W. 2d 394 (1977).

In *Jansen* v. *Blissenbach*, 214 Ark. 755, 217 S.W. 2d 849 (1949) we held that a referee for probate court could not become, in effect, a second or deputy probate judge.

In *Nixon* v. *Allen*, 150 Ark. 244, 234 S.W. 45 (1921) we held unconstitutional a legislative act providing for different persons to be county and probate judge. The power of the General Assembly to alter the judicial system is very limited.

Section 1, Article 7, cannot be read by itself. The remaining sections of the Judicial Article spell out in *every instance* the eight approved courts, describing their duties and their jurisdiction. The article, with all its sections, provides for a complete and comprehensive judicial system. Nowhere in it is there any mention of a "County Municipal Court."

The jurisdiction and powers of the Supreme Court are set forth in Section 4; Circuit Courts in Sections 11-14; Chancery Courts in Section 15; County Courts in Section 28; Court of Common Pleas in Section 32; Probate Courts in Section 34; Justices of the Peace in Section 40, and Corporation Courts for *cities and towns* in Section 43.

The jurisdiction of these courts is defined to avoid conflict: The jurisdiction of courts in cities and towns is spelled out to prevent conflict with justices of the peace; jurisdiction of justices of the peace courts is defined to avoid conflict with the circuit courts, Section 40. Courts of common pleas are limited to matters of contract and other civil matters not involving title to real estate. The jurisdiction of the supreme court is limited to appellate jurisdiction, a provision we have had to enforce. The General Assembly cannot add to or take away from that jurisdiction. *Harding* v. *State*, 94 Ark. 65, 126 S.W. 90 (1910). It is with these sections of the constitution and precedents in mind that we should examine the problem and not in the limited way the majority uses. The majority essentially rests its de-

cision on two words and a case. The words are "Municipal Corporations" and the case is *City of Hot Springs* v. *Gray*, 215 Ark. 243, 219 S.W. 2d 930 (1949). "Municipal Corporations" is interpreted to mean "county" in this instance, without regard to any comprehension of the Judicial Article.

The constitution, in defining municipal corporation courts as authorized in Section 1, Article 7, provides in Section 43: *Corporation Courts for Cities and Towns*. The constitution does not say "corporation courts for cities, towns and counties." In fact, I am firmly of the view that the great mischief behind this case was our decision in *State* v. *Woodruff*, 120 Ark. 406, 179 S.W. 813 (1915). We held, contrary to all principles of government, that a Little Rock Municipal Court had jurisdiction county-wide. This is the only government entity to my knowledge that has powers beyond its borders. That decision, however wrong in my judgment, has been the law so long it probably cannot be overturned. But this should not lead to the conclusion that if a city court can have jurisdiction county-wide, a county municipal court is justified. The majority also relies on the fact that sometimes a county is a municipal corporation. But a county is not always a municipal corporation, sometimes it is a county.

We should examine the constitution further to see what the framers meant in Section 1, Article 7, when they authorized *Municipal Corporation Courts*:

Article 12 of the Arkansas Constitution deals with the subject of municipal and private corporations. Section 4 starts out, "No municipal corporations shall be authorized ..." Then it mentions, "The fiscal affairs of *counties, cities and incorporated towns* shall ..." [Emphasis added.] There is no doubt that in this section a county is included in the definition.

Section 5 reads: "No *county, city, town or other municipal corporation* shall ..." [Emphasis added.]

Section 12 says: "Except as herein otherwise provided,

the State shall never assume or pay the debt or liability of any *county, town, city* or other *corporation*." [Emphasis added.]

In every instance where there would be any doubt, the *county* is mentioned in the section concerning municipal corporations. Therefore, we can conclude the framers included counties specifically in a class with cities and towns when they intended to. Looking back to the Judicial Article we find no place where it says "County Municipal Court." Section 43 mentions municipal corporation courts in *cities and towns only*. Why did the framers not provide for *county municipal courts*? The framers did not provide for such courts because they never dreamed of a county-wide court like the "Municipal" Court that was created in this case. Indeed, I would suggest they never dreamed of the one we approved in *Woodruff*. Article 7 creates a comprehensive court system, with jurisdiction of minor matters, out in a county, to be dealt with by the justices of the peace or the courts of common pleas. In cities and towns the court is a municipal court. That is the extent of the subject.

It was never thought of by anyone, to my knowledge, that an appellate court of appeals could be created except by constitutional amendment. In fact, the Court of Appeals was created by constitutional amendment, Amendment 58. Section 1, Article 7, does not say that the General Assembly cannot create such a court. It simply says there will be one supreme court.

Applying the logic of the majority a court of appeals could have been created by a legislative act because our Court of Appeals is not a Supreme Court; the constitution does not prohibit it so it can be done. Such a view of the constitution leads to distortions or, as in this case, a mutation — a "county municipal court."

I would, of course, reverse the trial judge on this issue and find the legislative act unconstitutional. I would not reach the second issue which gives a majority of this court some difficulty. Having approved a court not authorized by the constitution, i.e., the County Municipal Court, some members of the court find that they must also approve a new

way to select judges — appointment by the county judge. Others find that method illegal for reasons not argued. No matter how this "County Municipal Court" is dressed up, it still remains a court created by the General Assembly with the acquiescence of a majority of this court; it is not a court authorized by our constitution.

The unrestricted mischief that this creature will create cannot be ignored. Every county can now create its own traffic court. The temptation of such a proven source of revenue will be too great to resist. No doubt competition will abound between "city" municipal courts and "county" municipal courts since the constitution provides no guidelines regarding the authority or jurisdiction between such courts. The reason, of course, is that the constitution never contemplated that there would be such courts. All of this could be avoided if we would simply abide by the constitution.

I am authorized to state George Rose Smith, J., joins this dissent.