AMERICAN TRUCKING ASS'N, INC., et al. *v.* Henry C. GRAY, Dir., Arkansas Highway & Transp. Dep't, et al. and AMERICAN TRUCKING ASS'N, INC., et al. *v.* Charles D. RAGLAND, Comm'r of Revenues, Revenue Div., et al.

85-101 & 85-112                              707 S.W.2d 759

Supreme Court of Arkansas
Opinion delivered April 14, 1986
[Supplemental Opinion on Denial of Rehearing May 27, 1986.*]

*Hickman, J., would grant; Purtle, J., not participating.

490

*William S. Busker, Daniel R. Barney*, and *Robert Digges, Jr.*; and *Mitchell, Williams, Selig, Jackson & Tucker*, by: *Eugene G. Sayre, Pat Moran*, and *Timothy W. Grooms*, for appellant.

*Chris Parker, Ted Goodloe*, and *Thomas B. Keys*, for appellee, Henry C. Gray and the Arkansas State Highway Commission.

*Joe Morphew*, Revenue Legal Counsel, for appellee, Revenue Division.

*Steve Clark*, Att'y Gen., by: *E. Jeffery Story*, Asst. Att'y Gen., for appellees.

Jack Holt, Jr., Chief Justice. In this consolidated appeal, the constitutionality of Act 685 of 1983, Ark. Stat. Ann. §§ 75-

817.2, 75-817.3 and 75-819(b) (Supp. 1985), is challenged. The Act imposed a Highway Use Equalization (HUE) tax on all trucks that operate on Arkansas highways at maximum weights between 73,281 and 80,000 pounds. The appellants, American Trucking Association, Inc., (ATA), filed a complaint in Pulaski Chancery Court, fourth division, against appellees, Arkansas Highway and Transportation Department, alleging that the HUE tax would be an "illegal exaction." Appellants requested a temporary restraining order preventing the money collected under Act 685 from being deposited into the state treasury. Chancellor Bruce Bullion dissolved the temporary restraining order and denied appellants' requested preliminary injunction. That decision was appealed to this court. We affirmed Chancellor Bullion's decision and reserved any further consideration until after a trial on the merits. *American Trucking Ass'n, Inc., et al.* v. *Gray, Director*, 280 Ark. 258, 657 S.W.2d 207 (1983).

The case was remanded, certified as a class action, and the trial on the merits was held. Appellants attempted to prove that the HUE tax as written and administered was violative of the commerce clause, the privileges and immunities clause, and the equal protection clause of the fourteenth amendment to the United States Constitution. Chancellor Bullion ruled on October 11, 1984, that the tax was constitutional and that appellants' counsel were not entitled to attorneys' fees.

On January 25, 1984, the companion case of *ATA, Inc., et al.* v. *Charles D. Ragland, et al.*, was filed in the second division of Pulaski Chancery Court. That complaint also challenged the tax as an illegal exaction and alleged that Act 685, which was approved by a mere majority vote of the General Assembly, was subject to the three-fourths voting majority required by amendment 19 § 2 of the Arkansas Constitution. Chancellor John Earl granted appellees' motion for summary judgment on this issue. Since the facts and issues in the two appeals are similar, they were consolidated in this court. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(a), (c), and (j). We uphold the constitutionality of Act 685.

Act 685 provides that the HUE tax is to be administered for all Arkansas base-registered trucks by the Commissioner of Revenues of the Revenue Division of the Department of Finance

and Administration, while the Director of the Arkansas State Highway and Transportation Department administers the tax for all non-Arkansas base-registered trucks. The Act provides that the HUE tax for all vehicles can be satisfied through the election to pay:

1) an annual flat fee of $175;

2) a fee equal to 5¢ per mile for every mile the truck travelled in Arkansas during the previous registration year; or

3) for the purchase of a trip permit at the rate of $8.00 per hundred miles driven.

The appellants primarily rest their arguments on the results of a survey conducted by ATA regarding Arkansas and non-Arkansas base-registered trucks upon which the HUE tax is imposed. The survey results, according to appellants, established that the average cost of complying with the HUE tax, on a per mile of operation basis, affects non-Arkansas base-registered trucks at a rate 370% higher than it impacts Arkansas base-registered trucks. Under these circumstances, appellants maintain the practical effect of the HUE tax is to unconstitutionally discriminate against the non-Arkansas based vehicles' use of the highways. The appellants urge seven points for reversal, which will be discussed individually.

## I.

## THE HUE TAX VIOLATES THE COMMERCE CLAUSE

States are not permitted to tax interstate commerce in a manner that discriminates in favor of local interests. *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U.S. 450 (1959); *Boston Stock Exchange* v. *State Tax Comm'n,* 429 U.S. 318 (1977).

The appellants pursue two theories in their commerce clause argument. First, they state the HUE tax, although facially neutral, imposes a far higher effective tax rate on out-of-state trucks than on in-state trucks for the same use of the highways. Their second argument is that as a flat, nonproportional tax, it is

not fairly related to the level of highway services provided by the state to each HUE taxpayer.

In *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274 (1977), the United States Supreme Court considered the validity of a state sales tax under the commerce clause. The Court noted that under its prior decision in *Spector Motor Service* v. *O'Connor*, 340 U.S. 602 (1951), a state tax on the "privilege of doing business" was *per se* unconstitutional when it is applied to interstate commerce. In *Brady*, the Supreme Court overruled *Spector*, and instead, applied a four-part test to determine constitutionality under the commerce clause. Under that test a tax is valid when the tax (1) "is applied to an activity with a substantial nexus with the taxing State", (2) "is fairly apportioned", (3) "does not discriminate against interstate commerce", and (4) "is fairly related to the services provided by the State." In *Burlington N.R.R. Co.* v. *Ragland, Comm'r*, 280 Ark. 182, 655 S.W.2d 437 (1983), we acknowledged that "whenever there is a challenge to any state tax on interstate commerce, the tax will be subjected to the *Brady* test."

The appellants maintain that the HUE tax fails to meet the third and fourth prongs of the *Brady* test. Since they admit that the tax is facially neutral, the appellants are claiming in their discussion of the third prong, that its practical effect is to discriminate against interstate commerce. This argument is based on the results of the ATA survey discussed previously. Although several arguments, pro and con, are made about the veracity of the ATA survey, we find no evidence that the HUE tax discriminates against interstate commerce. The tax is structured to offer three options for compliance. A truck that meets the criteria of the tax may pay an annual flat fee, a fee based on mileage, or buy a trip permit. These options are available to intrastate and interstate carriers alike. The money collected is used to offset highway repairs and costs and thus the HUE tax is in the nature of a user fee or tax.

In *Aero Mayflower Transit Co.* v. *Georgia Public Serv. Comm'n, et al.*, 295 U.S. 285 (1935), the U.S. Supreme Court discussed a Georgia statute imposing an annual license fee for the maintenance of the highways. The Court found the statute did not lay an unlawful burden on interstate commerce. In so holding,

the Court noted that the fee is a moderate amount, it is used for the upkeep of highways, and "it is exacted without hostility to foreign or interstate transactions, being imposed also upon domestic vehicles operated in like conditions." There, too, the Court was confronted with the argument that the out-of-state carrier uses the roads of Georgia less than the local carriers, yet they pay the same amount. The Court held, "[t]he fee is for the privilege for a use as extensive as the carrier wills that it shall be. There is nothing unreasonable or oppressive in a burden so imposed . . . One who receives a privilege without limit is not wronged by his own refusal to enjoy it as freely as he may" (citations omitted).

Here, the amount of the fee is not being challenged as unreasonable *per se*, the money is used for the upkeep of the highways traveled by the carriers being taxed, and the tax applies to foreign and domestic carriers alike. The interstate carriers can opt to pay the flat fee. The fact that they do not make extensive use of the state's highways, does not make the tax levied discriminatory.

Again, in *Aero Mayflower Transit Co. v. Bd. of R.R. Comm'rs of Montana, et al.*, 332 U.S. 495 (1947), the Supreme Court discussed two flat highway taxes imposed "in consideration of the use of the highways of this state." The Court found neither exaction discriminated against interstate commerce since each applies alike to local and interstate operations and neither taxes traffic or movements taking place outside Montana. The Court stated:

> Motor carriers for hire, and particularly truckers of heavy goods, like appellant, make especially arduous use of roadways entailing wear and tear much beyond that resulting from general indiscriminate public use . . . Although the state may not discriminate against or exclude such interstate traffic generally in the use of its highways, this does not mean that the state is required to furnish those facilities to it free of charge or indeed on equal terms with other traffic not inflicting similar destructive effects . . . Interstate traffic equally with intrastate may be required to pay a fair share of the cost and maintenance reasonably related to the use made of the

highways. (citations omitted).

The appellants maintain that the *Brady* decision overruled the Court's early decisions in the two *Aero Mayflower* cases. We disagree. The Court expressly overruled only *Spector*. It did not so treat these cases. Furthermore, in *Massachusetts v. United States*, 435 U.S. 444 (1978), decided one year after *Brady*, the Supreme Court analogized the problem of a flat fee registration tax on all civil aircraft, to their previous motor vehicle tax cases, citing the Montana *Aero Mayflower* decision.

The Maryland Court of Appeals reached a similar conclusion in *American Trucking Ass'ns Inc., et al. v. Goldstein, et al.*, 483 A.2d 47 (Md. 1984), using reasoning we now adopt. That court discussed an annual registration fee imposed on all motor carriers operating in Maryland. The Maryland court specifically found that *Brady* "did not undercut the previously discussed flat highway user tax cases", which included both *Aero Mayflower* decisions.

In finding that the registration fee did not discriminate against interstate commerce under *Brady*, the Maryland court noted that "[i]t is not aimed at placing interstate business at a competitive disadvantage with local businesses", it "applies equally" to in-state and out-of-state registered motor carriers, and its purpose "is not to protect local carriers against foreign competition." Rather, the court noted its purpose "is to spread evenly among all commercial users the tax burden of supporting Maryland's highway system." The HUE tax meets the same criteria and accomplishes the same purposes.

■ The appellants claim their statistics show that the HUE tax is discriminatory because, on a cost per mile basis, out of state truckers are charged more. Assuming their statistics are valid, the flat tax portion of our law must, logically, be the most onerous provision. The per mile or per trip alternatives benefit the out of state truckers by permitting them to pay less than the flat tax. We need go no further than to cite the cases holding that a flat tax is not discriminatory. The alternatives offered by our law, which in fact could benefit the out of state truckers, do not make this case distinguishable from the ones approving the flat rate as being a proper tax method in the context of a commerce clause challenge.

As to the argument under the fourth prong of *Brady*, that as a flat tax, it is not fairly related to the level of highway services provided by the state to each HUE taxpayer, it can be answered under the same authority as the previous argument.

The first "flat fee" case dealt with by the U.S. Supreme Court was the Georgia *Aero Mayflower* case, supra. The Court upheld the flat tax then, and in subsequent flat fee cases, holding that a state may impose a flat fee for the privilege of using its roads. In *Capitol Greyhound Lines, et al.* v. *Brice, Comm'r*, 339 U.S. 542 (1950), the Court held that the formula used in calculating the flat tax was not crucial, rather the relevant inquiry was whether the amount of the tax was excessive. We agree. Acts of the Legislature are presumed to be constitutional and will not be held by the courts to be unconstitutional unless there is a clear incompatibility between the act and the constitution, with all doubts resolved in favor of the act. *Pulaski County Municipal Court* v. *Scott*, 272 Ark. 115, 612 S.W.2d 297 (1981). Here, the flat tax rate of $175 was not shown to be excessive or unreasonable.

II.

## THE HUE TAX VIOLATES THE EQUAL PROTECTION CLAUSE

The fourteenth amendment to the U.S. Constitution provides that no person shall be denied equal protection of the law by any state. Before a statute can be reviewed under the equal protection guarantee, a party must demonstrate that the law classifies persons in some manner. Nowak, Rotunda, & Young, *Constitutional Law*, p. 600 (2d ed. 1983). There are three ways to establish a classification: the statute may do so on its face; a facially neutral statute may be applied unevenly to different groups by those administering it; or a facially neutral law, applied evenhandedly, in reality may constitute a device designed to impose different burdens on different classes of persons. *Id*. The appellants argue that the tax classifies carriers based on interstate versus intrastate commerce.

Once a classification is found to exist, the equal protection analysis turns on whether the classification bears a rational relationship to a legitimate state interest.

■ We need not reach the rational relationship test, however, because no classification exists. The appellants acknowledge that the statute is facially neutral, so the first method of classifying is not established. The other two methods concern the uneven application and the burdensome effect of a neutral statute. We have already indicated in our discussion of the commerce clause that the statute is applied to interstate and intrastate carriers alike and does not have a discriminatory effect on interstate commerce. Since interstate commerce is not singled out for disparate treatment, no classification on that basis is made, and no equal protection problem arises.

## III.

### THE HUE TAX VIOLATES THE PRIVILEGES & IMMUNITIES CLAUSE

■ The privileges and immunities clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the Several States." United States Constitution, Art. IV, § 2. It is well established that the privileges and immunities clause is inapplicable to corporations. *Hemphill v. Orloff*, 277 U.S. 537 (1928); *Western & Southern Life Ins. Co. v. State Bd. of Equalization of Calif.*, 451 U.S. 648 (1981). The named appellants, ATA, et al., are all corporations. Nevertheless, they argue that since their complaint was certified as a class action, there are noncorporate individuals within the class which permits them to raise a privileges and immunities challenge, citing *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982), *rehearing denied. Cash* does not stand for that proposition. The lawsuit in that case was filed by six residents of the city of Little Rock who were water users. The case was certified as a class action. There is no discussion about corporate and noncorporate parties. Nor did our research indicate that there is any case law stating that it will be assumed that noncorporate individuals are included in a class action in a case such as this. In fact in *ATA, et al. v. Goldstein, et al., supra*, the same appellants attempted to raise a privileges and immunities argument. The Maryland court noted that the clause was inapplicable to corporations and stated: "[a]ll of the named plaintiffs are corporations. As such, they have no standing to challenge § 423(a) under the Privileges and Immunities Clause of Art. IV." Here, as in that

case, all the named plaintiffs are corporations. Therefore, they have no standing to make this argument.

## IV.

### THE ARBITRARY & DISCRIMINATORY REGULATIONS & ADMINISTRATION OF THE HUE TAX ARE UNCONSTITUTIONAL

Act 685 divides authority for the administration of the HUE tax between the Commissioner of Revenues of the Department of Finance & Administration, (DF&A) for Arkansas base-registered vehicles; and the Director of the Arkansas State Highway & Transportation Department, (ASH&TD) for non-Arkansas base-registered vehicles. Appellants do not object to the regulations or administration by the DF&A. Their argument under this point instead is directed toward the ASH&TD, whose regulations and policies, they maintain, violate the commerce clause, the privileges and immunities clause, and the equal protection clause of the Constitution.

We can immediately dispense with the privileges and immunities argument since the named appellants are corporations. As to the commerce clause and equal protection allegations, the appellants maintain that the regulations and policies of the ASH&TD violate the first and third prongs of the *Brady* test, *supra*. The appellants specifically object to (a) the ASH&TD's general approach, (b) the specialty carrier status, and (c) fleet registration.

(a) The general policies named by appellants are that the ASH&TD, unlike the DF&A, does not allow the owner/operator of non-Arkansas base-registered trucks the option of choosing whether to qualify their trucks by weight for the use of the highways afforded by payment of the HUE tax. The policy appellants are challenging requires non-Arkansas base-registered trucks to either declare that they are carrying 73,281 pounds in Arkansas and pay the HUE tax, or else take some affirmative action to elect not to carry that weight. A non-Arkansas base-registered truck who has not taken either of these actions is not allowed to enter the state. This affirmative action is burdensome on interstate commerce according to the appellants.

The appellants' argument is without merit. All trucks

must declare their gross weight for travel in Arkansas. Arkansas base-registered vehicles do so when they register in this state. Those Arkansas vehicles who participate in the International Registration Plan (IRP) declare their weight by a sworn statement on the IRP application. Obviously, a comparable opportunity was needed for non-Arkansas base-registered carriers to declare their gross weight. The Highway Department established a mechanism where a carrier could either qualify and pay the HUE tax or formally declare a gross weight below 73,281 pounds and obtain a free specialty carrier decal. The state's interest in a weight declaration from all trucks travelling on state highways is apparent, satisfying the first prong of *Brady*.

■ As to the discrimination issue raised under the third prong, all carriers have to take some affirmative action to declare the weight of their vehicles. Here, ASH & TD had the authority to promulgate its regulation and it is reasonable. As a practical matter the mechanism for registration differed for interstate vehicles, yet the result was the same, without undue burden to interstate commerce. During oral arguments, appellees' counsel explained that to implement registration procedures, it was necessary to utilize a certain policy during the first two years of registration after the act became effective, however, that now there is no difference in registration for those carriers who are members of IRP. They are presently allowed to declare the gross weight of their vehicles when they register in other states. Likewise, non-Arkansas base-registered carriers, who are not members of IRP, still submit an affidavit as to weight and receive a special carrier decal upon entry into Arkansas. These simple methods for carriers to declare gross weight of vehicles for travel in Arkansas are non-discriminatory.

■ (b) The specialty carrier status was created by regulation and is awarded to carriers entering the state who are carrying below 73,281 pounds or fall within a statutory exemption and are thus not subject to the HUE tax. The specialty carrier decal is given free to those carriers and allows them entry into the state. Appellants contend the status was created by regulation even though the language of Act 685 does not provide a rational basis for the creation of such a classification. This action, they claim, violates the agency's legislative grant of rule-making authority, citing *State, ex rel Attorney General* v. *Burnett*, 200 Ark. 655,

140 S.W.2d 673 (1940). *Burnett* held that a regulation promulgated by the commissioner of revenues was contrary to the applicable statute and therefore void. The specialty carrier status is not contrary to Act 685. It identifies exemptions to the HUE tax, including trucks carrying less than 73,281 pounds. Since the ASH&TD is required to administer the HUE tax and to do so requires a determination of the gross weight of vehicles using the state's highways, the designation of the specialty carrier status is a way to facilitate collection of that tax and is within the agency's power to promulgate.

(c) Appellants also complain that non-Arkansas base-registered carriers must qualify their trucks by an "integral fleets" classification, under only one payment option. Arkansas-based owner/operators are allowed by DF&A to pick their payment option and apply it to their individual trucks, according to appellants.

The appellants misinterpret the pertinent policies. The actual practices of the ASH&TD and DF&A are the same: they allow one payment option per fleet. Arkansas base-registered vehicles that are registered under the IRP have their mileage reported by the IRP on a fleet basis. That IRP mileage documentation is then used by the DF&A to allow the carrier to select an option for each fleet. Similarly, the ASH&TD allows mileage documentation to be computed on a fleet basis using either IRP records or other records submitted to a governmental entity for some official purpose. Once the fleet is set, in either case, only one option of HUE payment is allowed.

The ASH&TD allows non-Arkansas based carriers, where separate integral fleets exist under one ownership and separate record and reporting systems are maintained for each integral fleet, to select separate options. Highway Department Regulation V(B). The DF&A also has a regulation stating that IRP qualification shall be on a fleet basis and all affected vehicles will pay either of two relevant options. Highway Use Equalization Tax Regulations, paragraph (8). Mary Ellen Gerke, head of the Revenue IRP Unit, testified that a single IRP fleet can select an option but the owner has to then exercise the same option with all the trucks in that account or fleet. Since there is no disparate treatment there is no basis for a claim of discrimination.

## V.

### *ACT 685 OF 1983 WAS NOT ADOPTED IN ACCORDANCE WITH THE REQUIREMENTS OF THE ARKANSAS CONSTITUTION*

Amendment 19 § 2 of the Arkansas Constitution provides that no rates for "property, excise, privilege or personal taxes now levied shall be increased by the General Assembly except . . . in case of an emergency, the votes of three-fourths of the members elected to each House of the General Assembly."

The appellants suggest that Act 685 is an increase in an existing "privilege tax" and is therefore subject to the three-fourths vote requirement. In support of their allegation that an existing privilege tax has been increased, appellants point to the registration fee charged under Ark. Stat. Ann. § 75-201 (Repl. 1979 and Supp. 1985), as the tax that Act 685 increased. Appellees maintain this is a new tax on the new privilege of carrying larger loads. We find that amendment 19 § 2 is inapplicable because Act 685 does not impose a privilege tax but rather exacts a user fee from motor vehicles carrying the prescribed weight. In *Evansville-Vanderburgh Airport Auth. Dist., et al.* v. *Delta Airlines, Inc.*, 405 U.S. 707 (1972), the U.S. Supreme Court explained:

> that a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance may constitutionally be imposed on interstate and domestic users alike. . .

> . . . .

> At least so long as the toll is based on some fair approximation of use or privilege for use, . . . and is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred, it will pass constitutional muster. . .

Such charges for the use of public facilities, like highways, have been characterized as being in the "nature of rent charged by the State, based upon its proprietary interests in the public property, rather than of a tax." Hartman, *Federal Limita-*

*tions on State and Local Taxation*, Chapt. 12 p. 665 (1981).

■■■ We find that this is a user fee, passed by the Legislature to compensate the state for the wear and tear on the highways caused by trucks carrying the higher weights. It is not a privilege tax in a technical sense. A privilege tax is "[a] tax on the privilege of carrying on a business or a occupation for which a license or franchise is required." Black's Law Dictionary, (5th ed. 1979). Trucks not carrying the higher weight are not prohibited from travelling through the state, thus, the HUE tax is not a tax for the privilege of carrying on a business. It is instead a charge for the damage done by trucks carrying the higher weights and is exacted to make repairs. Since the approval of a user fee does not necessitate a three-fourths majority in the Legislature, appellants' argument is without merit.

## VI.

### THE FINDINGS & CONCLUSIONS OF THE CHANCELLORS ARE INSUFFICIENT UNDER ARCP RULE 52(a)

■■ Arkansas Rules of Civil Procedure Rule 52(a) provides that, in contested actions tried by a judge without a jury, if requested by a party, "the court shall find the facts specifically and state separately its conclusions of law thereon." Appellants here object to the findings of fact and conclusions of law promulgated by the chancellors, claiming they were very brief, general and conclusory in nature. Rule 52(a) does not address the specificity with which findings of fact and conclusions of law must be made. Furthermore, we review chancery cases *de novo* and the chancellors' findings and conclusions are supported by the record in this case. Accordingly, this point is not well taken.

## VII.

### APPELLANTS SHOULD BE AWARDED ATTORNEYS' FEES WITH REGARD TO ANY REFUNDS RECEIVED BY MEMBERS OF APPELLANT CLASS

The appellants pursue two theories seeking attorneys' fees. Initially they state that if this court should find that the HUE tax is an illegal exaction and refund taxes collected to members of appellant class, that a portion should be awarded as attorneys'

fees. Since we find that the tax is constitutional, this argument need not be addressed.

Appellants next contend that, notwithstanding the decision on the merits, Chancellor Bullion erred in denying them an award of $9,270.42 in attorneys' fees. The chancellor found that refunds were made to the class from taxes erroneously collected pursuant to emergency regulations, before the final regulations were enacted. The final regulations did not include this erroneously collected tax. The judge ruled, however, that there was no common fund from which the attorneys' fees could be paid, and denied the claim. We agree.

In *Powell, Mayor of N.L.R.* v. *Henry*, 267 Ark. 484, 592 S.W.2d 107 (1980), the appellants sought attorneys' fees from refunds that were made to electrical ratepayers. This court held that attorneys' fees were proper because the refund created a common fund, and stated:

> [T]he action was a class action, which resulted in the recovery of a substantial amount which constituted a common fund. The allowance of attorneys' fees from a common fund established or augmented through the efforts of the attorneys to whom the fee is allowed is a well recognized practice and is proper. (citations omitted).

Awards have been made by courts based on the common fund doctrine where the litigation results in the creation of a common fund against which the fees may be awarded. Annotation, 89 A.L.R.3d 690, 701 (1979).

In finding that the common fund requirement was not met, Chancellor Bullion explained in a letter opinion that:

> Because the Court refused to enjoin the collection of this tax, and refused to require the tax monies to be deposited in an escrow account, all of the tax monies collected under Act 685 have been, and are now being deposited in the State Treasury. There is no impounded fund from which costs and fees that might be allowed for a successful taxpayers action to be drawn.
>
> Monies paid by truckers under the offensive emergency regulation long ago ceased to be paid, and those who

paid under its mandates received full refunds long ago. It is probably true that other lawful Act 685 taxes are being received by the State on a daily basis, but this tax money is not related to the offensive emergency regulation, rather are being collected pursuant to the valid exercise of the State's power to tax. In this situation, it is beyond the power of this Court to order state government to pay counsel for the class a fee for services, no matter how deserving it may be.

We do not find the chancellor's finding of fact that no common fund was established to be clearly erroneous. Ark. R. Civ. P. 52(a). Accordingly we affirm his judgment.

Affirmed.

PURTLE, J., not participating.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. This is a test of the Arkansas Highway Department's answer to the claim that our state's highways will be damaged because of the increase of the maximum weight limit on trucks to 80,000 pounds. The legislature's goal was to tax these heavy trucks to make them pay for their share of the damage to our highways. That worthy goal was partly forgotten by the legislators, resulting in a tax which decidedly favors Arkansas-based trucks. Those trucks may do all the damage they want for $175 per year.

The evidence reflected that interstate truckers invariably choose to pay five cents per mile or purchase a trip ticket, rather than pay the annual fee of $175 per truck. That is the only sensible choice for interstate truckers who will not use Arkansas Highways extensively. Arkansas-based truckers just as sensibly choose to pay the $175 per truck every year, because there is no mileage limit with that payment. They can drive thirty thousand miles for considerably less than five cents a mile.

Interstate truckers, not based in Arkansas, are paying 370% more than Arkansas-based truckers for the damage done. That is discrimination that violates the commerce clause of the United States Constitution. Discriminatory, parochial legislation such as this interferes with interstate commerce, an exclusive province of

the federal government. *Boston Stock Exchange* v. *State Tax Commission*, 429 U.S. 318 (1977); *City of Philadelphia* v. *New Jersey*, 437 U.S. 617 (1978).

Perhaps most important to us in Arkansas is the fact that the tax as delineated does not make those pay who may do the most damage; our own truckers.

The tax must be fairly related to the services provided, in this case decent highways. *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274 (1977). A mile-weight tax is probably the most fair and sensible answer to the problem: all truckers, Arkansas-based and interstate, pay equally for the damage to the highways. Not only is that sensible, it is unquestionably fair to the people of this state who have to bear any unpaid costs for damage.

I would find the tax violates the commerce clause of the United States Constitution.

Supplemental Opinion on Denial of Rehearing
Opinion delivered May 27, 1986

709 S.W.2d 410

JACK HOLT, JR., Chief Justice. The appellants filed a petition for rehearing contending in part that we erred by failing to address the question of whether the HUE tax violates the privileges and immunities clause of the United States Constitution.

In the opinion, we incorrectly found the appellants lacked standing to raise this argument since all of the named plaintiffs are corporations and the privileges and immunities clause is inapplicable to corporations.

Appellants maintain in their petition that the parties had stipulated that there were two individuals named in the complaint as representative appellants who were so named for the purpose of raising this issue. The respondent states that this is so. Accordingly, we admit error and address this question on its merits.

The privileges and immunities clause provides:

> The Citizens of each State shall be entitled to all Privileges and Immunities in the Several States.

The United States Supreme Court has explained that "[t]he primary purpose of this clause . . . was to help fuse into one Nation a collection of independent, sovereign States. It was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer* v. *Witsell*, 334 U.S. 385, 395 (1948); *see also Paul* v. *Virginia*, 8 Wall. 168 (1868); *Ward* v. *Maryland*, 12 Wall. 418 (1870). In *Ward* v. *Maryland*, the Supreme Court stated:

> Beyond doubt those words are words of very comprehensive meaning, but it will be sufficient to say that the Clause plainly and unmistakably secures and protects the rights of a citizen of one State to pass into any other State of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation . . . and to be exempt from any higher taxes or excises than are imposed by the State upon its own citizens.

*Ward* at p. 430.

■ The HUE tax does not violate the privileges and immunities clause. We have already held that the tax is facially neutral, applying equally to both Arkansas base-registered trucks as well as to non-Arkansas base-registered vehicles. Further, the Arkansas and non-Arkansas based trucks share the same opportunity of carrying the higher weights. Therefore, there is no classification made between citizens of one state as opposed to citizens of another state.

■ The second argument by petitioners is that the court was incorrect in finding that the tax did not discriminate against non-Arkansas based trucks. Petitioners cite two Vermont cases which have been decided since the arguments were presented in this appeal. We are obviously not bound by the decisions of a Vermont court. Furthermore, in those cases, the court found that the relevant statutes imposed different requirements on out-of-state operators. Here, the HUE tax applies equally to all operators and any disparity in amounts results from the number

of miles traveled by their trucks. The rest of petitioners' argument on this issue and their final contention are essentially restatements of their original brief and thus not proper for rehearing. Sup. Ct. R. 20(g).

Rehearing denied.

PURTLE, J., not participating.

HICKMAN, J., would grant rehearing.